UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOSIAH J STRONG,

        Plaintiff,

v.

                                  Case No. 24-cv-0823-bhl

ST. PETER-IMMANUEL LUTHERAN
CHURCH AND SCHOOL and
ELIZABETH DILLETT,

        Defendants.

---

### ORDER GRANTING IN PART DEFENDANT ST. PETER-IMMANUEL LUTHERAN CHURCH AND SCHOOL'S MOTION TO DISMISS

---

        On July 2, 2024, Plaintiff Josiah Strong filed this lawsuit against Defendants Elizabeth Dillett and St. Peter-Immanuel Lutheran Church and School (St. Peter-Immanuel), seeking damages arising from a sexual relationship between Dillett, a kindergarten teacher at St. Peter-Immanuel, and Strong, a teenager who worked as a part-time custodian at the school. (ECF No. 1.) Strong's second amended complaint asserts claims under Title IX of the Civil Rights Act and Wisconsin law. (ECF No. 30 ¶¶53–113.) On December 10, 2024, St. Peter-Immanuel moved to dismiss all claims against it, contending, among other things, that Strong's Title IX claim is untimely. (ECF Nos. 32 & 33.) For the reasons discussed below, St. Peter-Immanuel's motion will be granted in part. St. Peter-Immanuel is correct that Strong's Title IX claim is untimely. Accordingly, the Court will grant St. Peter-Immanuel's motion as to that claim only. The Court will relinquish jurisdiction over Strong's remaining state-law claims, which will be dismissed without prejudice. If Strong wishes to pursue his state law claims, he can do so in state court.

### FACTUAL BACKGROUND[1]

        St. Peter-Immanuel is a private school located in Milwaukee, Wisconsin. (ECF No. 30 ¶6.) In 2015, St. Peter-Immanuel employed Elizabeth Dillett as a kindergarten teacher and athletic

---

[1] This Background is derived from Strong's second amended complaint, (ECF No. 30), the allegations in which are presumed true for purposes of the motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).

director. (*Id.* ¶7.) Strong graduated from St. Peter-Immanuel in 2014 and then worked as a part-time janitor at the school. (*Id.* ¶¶8, 11.) In January 2015, Strong was 14 years old. (*Id.* ¶8.)

Dillett was Strong's supervisor and responsible for assigning him tasks. (*Id.* ¶10.) Her interactions with Strong were innocuous until she began buying him food and gifts and providing him with rides home from school. (*Id.* ¶¶14–15.) As Dillett's time alone with Strong increased, her concerning behavior escalated: she engaged in sexual conversations with him that eventually led to repeated instances of intercourse. (*Id.* ¶¶19, 20.)

Sometime prior to December 2015, rumors began circulating that Dillett had sexual relationships with three former students, including Strong. (*Id.* ¶26.) A parent of another minor who heard the rumors informed St. Peter-Immanuel's then-principal, Amy Peuchner, of the allegations. (*Id.* ¶27.) Peuchner dismissed the allegations, insisting that the issue was between Strong's mother and Dillett. (*Id.* ¶29.) Peuchner later held a meeting with the complaining parent, Strong's mother, and Dillett. (*Id.* ¶30.) During the meeting, Dillett denied the allegations, and Strong's mother unsuccessfully requested that St. Peter-Immanuel undertake a formal investigation. (*Id.* ¶¶31–32.) Strong, then still a minor, was unaware of the meeting, and his relationship with Dillett led to six to seven more sexual encounters over the next four months. (*Id.* ¶33.)

On April 7, 2016, Strong's father discovered text messages between his son and Dillett. (*Id.* ¶¶38–39.) When questioned by his father, Strong admitted to the relationship. (*Id.* ¶39.) Strong's parents then confronted Dillett and reported her conduct to Child Protective Services, which conducted an investigation that ultimately led to Dillett's incarceration. (*Id.* ¶¶40, 41–42, 45–46.)

Strong's mother also reported St. Peter-Immanuel's failure to investigate the sexual relationship to Child Protective Services. (*Id.* ¶42.) Despite his mother's reports, his admission of the relationship to his father, and Dillett's incarceration, Strong contends he remained in denial about his relationship with Dillett. (*Id.* ¶50.) He claims it was not until March 30, 2023, with the help of therapy, that he realized he had suffered injuries as a result of Dillett's misconduct. (*Id.* ¶¶50–52.) He further alleges that, until May 14, 2024, he was without actual knowledge that the concerned parent had notified St. Peter-Immanuel of the relationship. (*Id.* ¶43.)

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). A complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint "must do more than recite the elements of a cause of action in a conclusory fashion." *Roberts*, 817 F.3d at 565 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint survives a 12(b)(6) motion when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). The complaint will be dismissed if it fails to allege sufficient facts to state a claim on which relief may be granted. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018 (7th Cir. 2013).

## ANALYSIS

Strong's latest complaint alleges a single federal cause of action—a Title IX claim against St. Peter-Immanuel. (*See* ECF No. 30 ¶¶100–13.) He also asserts four state law claims for: (1) battery against Dillett; (2) intentional infliction of emotional distress against Dillett; (3) breach of fiduciary duty against Dillett; and (4) vicarious liability against St. Peter-Immanuel for Dillett's actions. (*Id.* ¶¶53–99.) St. Peter-Immanuel moves to dismiss both the Title IX and vicarious liability claims. (ECF No. 32.) Because the Court concludes that the sole federal claim is time-barred, it will dismiss that claim and relinquish jurisdiction over Strong's remaining state law claims by dismissing them without prejudice and without ruling on the merits of St. Peter-Immanuel's arguments and defenses.

**I.    Strong's Title IX Claim Is Barred by the Applicable Statute of Limitations.**

St. Peter-Immanuel seeks dismissal of Strong's Title IX claim because it is untimely. (ECF No. 33 at 6–13.) More specifically, St. Peter-Immanuel argues that the claim is governed—and barred—by Wisconsin's 6-year statute of limitations for personal injury claims. (*Id.* at 6.)

Dismissal of a complaint at the pleading stage on statute of limitations grounds is appropriate in only limited circumstances. Such a defense must ordinarily await further pleadings and discovery because a plaintiff is under no obligation to "anticipate and overcome affirmative defenses, such as the statute of limitations" in pleading his claims. *See Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). Dismissal based on a statute of limitations defense is proper, however, when the "plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Id.* at 674–75 (citing *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006)). St. Peter-Immanuel contends that is the case here.

Title IX does not have its own statute of limitations; accordingly, a district court must look to the forum state's statute of limitations for personal injury claims. *Doe v. Howe Mil. Sch.*, 227 F.3d 981, 987–88 (7th Cir. 2000). At the time of the events in question, Wisconsin had a six-year statute of limitations for personal injury claims, including claims for sexual assault. *See D'acquisto v. Love*, No. 20-C-1034, 2020 WL 5982895, at *1 (E.D. Wis. Oct. 8, 2020) (explaining that personal injury claims accruing prior to 2018 are subject to Wisconsin's six-year statute of limitations); Wis. Stat. §893.53 (1979). Strong does not appear to dispute that his Title IX claim is subject to this six-year limitations period. (*See* ECF No. 34 at 14, 17–24.) Strong does challenge, however, whether the limitations period had run on his claim by the time he filed suit, invoking both the discovery rule and the doctrine of equitable tolling. (ECF No. 34 at 17–24.) Neither doctrine renders his Title IX claim timely here.

A Title IX claim generally accrues, and the statute of limitations begins to run, when a school acquires actual notice of misconduct. *See C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 540 (7th Cir. 2022). At that point, the school has a duty to act and, if it fails to do so, the plaintiff has a claim under the statute. *Id*. Strong's second amended complaint alleges that St. Peter-Immanuel received actual notice of Dillett's improper sexual conduct with Strong in December 2015, when another child's mother notified St. Peter-Immanuel of the behavior. (ECF No. 30 ¶¶26–29.) Accordingly, at that time, the school had an obligation to act and when it failed to do so, Strong's claim accrued. The six-year limitation began running at that time and thus expired in December 2021. *See* §893.53.

Strong argues his Title IX claim is nevertheless timely under the discovery rule because he was "in denial about the improper relationship" and did not know of his injury at the time of the assaults. (ECF No. 34 at 17–18.) Citing Seventh Circuit caselaw involving the Federal Tort

Claims Act, Strong contends that the statute of limitations on his claim did not begin to run until March 30, 2023, when, through therapeutic intervention, he realized his injuries. (*Id.*) These citations are misplaced, however, because in the Title IX context, the Court applies the forum state's law to any proposed exceptions to the statute of limitations. *See Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001) (citing *Smith v. City of Chicago Heights*, 951 F.2d 834, 839–40 (7th Cir. 1992)). And the distinction between federal and state law is important, "because the federal [tolling] doctrine may be broader than the state one." *Shropshear v. Corp. Couns. of Chi.*, 275 F.3d 593, 596 (7th Cir. 2001).

Strong's assertion that he was "in denial" is legally irrelevant under Wisconsin law. The Wisconsin Supreme Court considered a similar argument in *Doe v. Archdiocese of Milwaukee*, 565 N.W.2d 94 (Wis. 1997), in which a plaintiff argued that his personal injury claim for an alleged sexual assault should be considered timely given that he had "repressed memories," which he contended should delay the accrual of his claim. The Court rejected this argument, holding that "accrual of an action is not dependent upon knowing the full extent of one's injuries." *Doe v. Archdiocese*, 565 N.W.2d at 106. This ruling precludes Strong's argument here. Because Wisconsin law does not allow Strong to delay the running of the relevant statute of limitation based on his alleged unawareness of the extent of his injuries, his invocation of therapeutic intervention does not render his claim timely.

However, Strong's invocation of the discovery rule does have some merit. Under Wisconsin law, the discovery rule delays accrual of a tort claim until the plaintiff knows of his injury or until, in the exercise of reasonable diligence, he should have known of his claim—whichever comes first. *See Hansen v. A.H. Robins, Inc.*, 335 N.W.2d 578, 583 (Wis. 1983). Reasonable diligence is "'such diligence as the great majority of persons would use in the same or similar circumstances' to discover the cause of the injury." *Allen v. Wis. Pub. Serv. Corp.*, 649 N.W.2d 420, 424 (Wis. Ct. App. 2005) (quoting *Spitler v. Dean*, 436 N.W.2d 308, 311 (Wis. 1989)). The Wisconsin Supreme Court cautions against applying the discovery rule to claims of "emotional" and "psychological" injuries, because the "potential for fraud is exacerbated." *Pritzlaff v. Archdiocese of Milwaukee*, 533 N.W.2d 780, 788 (Wis. 1995) (emphasizing that discovery rule should only apply when "allowing meritorious claims [to proceed] outweighs the threat of stale or fraudulent actions" (citing *Hansen*, 335 N.W.2d at 582)).

Applying Wisconsin's discovery rule, Strong's Title IX claim may have been tolled until April 2016 at the latest. The discovery rule tolls accrual until Strong discovered, or with reasonable diligence should have discovered, that St. Peter-Immanuel failed to act upon notice of Dillett's actions. *See C.S.*, 34 F.4th at 540; *see also Hansen*, 335 N.W.2d at 583. By April of 2016, Strong had admitted his sexual relationship with Dillett to his parents. (ECF No. 30 ¶39.) And his mother was aware that the school had been put on notice of the alleged misconduct and, in fact, had reported St. Peter-Immanuel's failure to investigate the sexual relationship to Child Protective Services. (*Id.* ¶42.) Strong cannot reasonably argue that he did not know, let alone that he could not reasonably have discovered, the facts underlying his Title IX claim by that point.

In his complaint, Strong alleges that he was without knowledge of St. Peter-Immanuel's failure to act until May 14, 2024. (ECF No. 30 ¶43.) This allegation is not plausible. Given the other allegations pleaded, Strong cannot reasonably claim to have been unaware of St. Peter-Immanuel's failure to act for over nine years. *See Allen*, 649 N.W.2d at 424. Wisconsin law provides that Strong "may not close [his] eyes to means of information reasonably accessible to [him] and must in good faith apply [his] attention to those particulars which may be inferred to be within [his] reach." *Spitler*, 436 N.W.2d at 311. Accordingly, even with the benefit of the discovery rule, Strong was required to file his Title IX claim by April 2022. *See* Wis. Stat. §893.53 (1979). But Strong did not initiate this lawsuit until July 2, 2024, more than two years too late. Therefore, the discovery rule does not render Strong's claim timely.

Last, Strong invokes the doctrine of equitable tolling to delay accrual. (ECF No. 34 at 21–24.) Strong's equitable tolling argument is essentially the same as his discovery rule contention, but simply under a different label. (*See id.* at 21–22.) And Strong again fails to use Wisconsin law to support his argument. (*See id.*); *see also Johnson*, 272 F.3d at 521. While Wisconsin recognizes the doctrine of equitable tolling, it is inapplicable here. Wisconsin courts employ equitable tolling "when a required act is dependent on a prior necessary act of another over whom the person seeking equitable tolling has no control." *State v. Zimbal*, 896 N.W.2d 327, 340 (Wis. 2017) (Roggensack, J., concurring) (citing *State ex rel. Nichols v. Litscher*, 635 N.W.2d 292, 298–99 (Wis. 2001)). That is not what Strong alleges happened. Strong and his parents were not dependent on any third party for the filing of their Title IX claim. Their failure to pursue this claim timely cannot be blamed on anyone else and, thus, equitable tolling does not apply. Strong's invocation of equitable tolling is simply an effort to recast his discovery rule arguments in a

different wrapper. Because neither of the exceptions to the statute of limitations applies, Strong's claim is untimely, and his Title IX claim must be dismissed.

## II. Because Strong's Lone Federal Claim Fails, the Court Will Not Exercise Supplemental Jurisdiction Over His Remaining State Law Claims.

With Strong's Title IX claim dismissed, his remaining claims all arise under Wisconsin state law. (ECF No. 30 ¶¶53–99.) Strong raises those claims in this Court based solely on the Court's supplemental jurisdiction under 28 U.S.C. 1367(a). (*Id.* ¶2.) The general rule, however, is that, "when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994)); *see also Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 896 (7th Cir. 2001) (holding that while the district court could have exercised supplemental jurisdiction over state law claims after dismissing all federal claims, it was not required to do so). Strong has provided no basis for deviating from this general approach. Accordingly, the Court declines to exercise supplemental jurisdiction over Strong's state law claims, which he may pursue in state court if he wishes.

## CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant St. Peter-Immanuel Lutheran Church and School's Motion to Dismiss, ECF No. 32, is **GRANTED** with respect to Strong's Title IX claim. The Court relinquishes its jurisdiction over Strong's remaining claims, and the case is **DISMISSED.** The Clerk is instructed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on January 27, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge
